Good morning, Your Honors. May it please the Court, Franklin W. Nelson for Petitioner. The sole issue on appeal in this case is whether the immigration judge's adverse credibility finding is supported by substantial evidence. Petitioner applied for asylum approximately three and a half months after arriving in the United States from the People's Republic of China. He applied for asylum because he and his wife had been harmed in the past and he felt that he would be harmed if he returned to China on account of China's coercive population control policies. Specifically, Petitioner was forced to have or Petitioner's wife was forced to have an abortion on three separate occasions, twice before Petitioner left for the United States and once a few months after he arrived. In addition, after the second although they were subsequently able to open their own restaurant in 1998, when the government suspected that Petitioner's wife had become pregnant again, they came to the restaurant, asked Petitioner to produce his wife within three days. When he did not produce his wife within three days, they returned to the restaurant, closed it down, arrested him, detained him and harmed him because they believed that he and his wife had intentionally violated the government's coercive population control policies. The evidence before the immigration judge included Petitioner's testimony, a letter from Petitioner's father, which also enclosed the medical record from the wife's last abortion in 1999. Kennedy. When he came to the United States or sought his visa, did he commit fraud by not going to the counselor's office? Yes, Your Honor, he did. So it's a fraudulent entry, right? Yes, Your Honor. Does that have anything to do with his credibility? No, Your Honor. This Court has held, and the Board of Immigration Appeals has also held, that obtaining fraudulent documents in order to travel to the United States fleeing with persecution is entirely consistent with somebody fleeing persecution and should not have an adverse impact on an applicant's credibility when applying for asylum. He left his wife there, right? Yes, Your Honor. And they were both government employees at one point in time, were they not? That's correct, Your Honor, at the same company. Is he an agent of the State? I would say he's only an agent of the State insofar as any employee of a government-run company is an agent of the State. But he didn't make any of these disclosures to the counselor's office before he came? No, Your Honors. In fact, there was no interview that he attended before the counselor's office or this entire – his visa to travel to the United States was arranged through a friend of his, and he actually testified that he didn't know any of the details about how that visa was obtained. He did specifically testify that there was no consular office. Is this how some of these people got into the United States that did a lot of damage on the East Coast, right? I know that a couple of them came in on student visas. I'm really not familiar with how the other – I'm assuming the court is – you're talking about the 9-11 bombings. Yes. As I was stating earlier, Petitioner's father sent him a letter in closing medical records regarding the wife's third abortion and also including a picture of the Petitioner's family home showing that it had been sealed by the government. Evidence also – What do we know about that? I think the I.J. stated that there was some Chinese writing on the tape, but it had not been translated, so we don't have any idea whether it related to this or not. We don't even know who Dora was. Well, we actually do, Your Honor. The Petitioner was actually shown the picture during direct examination. He identified the picture as a picture of his house and also translated himself the writing that appeared on the door. In addition to that – What did the writing say? I didn't see that in the record. I believe it said sealed by the Resident Neighborhood Committee. The Respondents in the brief correctly state that it doesn't say that it was sealed because they had violated the course of population control policies, but it does clearly indicate that it was sealed. And I believe that that translation also appears as part of that exhibit. And the judge was simply mistaken when she said there was no translation. Petitioner – But the translation came from the Petitioner. Wasn't the concern that if we don't believe the Petitioner, why should the immigration judge believe his translation? Well, the translation also – the translation also appeared actually on the translation portion of the picture. There was the picture, and then right below the picture there was actually a typewritten translation of what was depicted on there. And was that done by a court-certified interpreter, or was that also done by Petitioner or Petitioner's counsel? It was not done by Petitioner or Petitioner's counsel, Your Honor. I don't know if it was – I don't think the record reflects exactly who that translation was done by. So we don't know who translated it. We don't. Okay. That's true. We don't. But, again, the Petitioner did also translate and did identify and authenticate that photograph. Doesn't the BIA have some pretty clear rules with regard to how one authenticates and translates documents from foreign languages so that they are admissible at the immigration judge hearing? Translation of foreign documents, yes. Section 3.3 of the regulations merely indicates that the translator has to state that they are competent to translate between the foreign language and English, in this case English and Mandarin. And you're not contending here that those rules were complied with? No, Your Honor. But neither does the judge indicate in her decision that the noncompliance with Section 3.3 of the regulations was a basis for her decision. Well, she says she chooses not to believe or accept the photograph, right? That is correct. Is that an abuse of discretion, given the fact that the Petitioner didn't comply with the rules for properly authenticating evidence for admission? I would say that it's a mischaracterization of the evidence, Your Honor. But it's purely a question of admissibility of evidence, isn't it, counsel? And how does the immigration judge err by refusing to consider evidence that is not properly authenticated and therefore not properly admissible in evidence at the proceeding? That is correct, Your Honor. But the fact that their house was sealed, although it was additional evidence presented in the case, whether or not it was sealed and whether or not that picture was there does not – would not have made a difference. If his testimony was found to be otherwise credible, the presence or absence of that picture in the evidentiary record would not have made a difference regarding those words or sign. I guess I'm struggling with the same problem that Judge Beezer was questioning you about, and that is I recognize that there are statements in Ninth Circuit case law that say that it may not necessarily be substantial evidence to rely upon the fact that somebody obtained fraudulent entry to the United States to find them not credible. But at some point, don't we have to give some deference to the finder of fact who cites a host of deficiencies in the evidence that the petitioner introduces as a basis for discrediting the testimony of the petitioner, or are we just going to review all of this de novo as if there had never been a fact finder? Well, Your Honor, according to the law of this circuit, this circuit reviews each basis announced by the IJ in support of adverse credibility finding independently to determine whether or not it's supported by substantial evidence. Well, if you prevail here, we're going to have to send this case back to the exercise of discretion by the Attorney General in any event, right? Yes, Your Honor. You can't grant it. As we can send it back. Well, it's. That's what he says to do. Yeah. You're talking about the Supreme Court case in Ventura as it's been subsequently interpreted by this Court. I think that regarding withholding this case falls under one of the narrow exceptions. It does entitle this Court to grant withholding here since this is, of course, a family planning case, and that is built into the definition of refugee under 8 U.S.C. 1101, 842. Well, in light of his conduct in entry, it makes me a little bit nervous. I would rather the Attorney General exercise the discretion that's available in refugee cases and not — I'm not going to undertake to exercise that discretion. And I'm not contending at this time, Your Honor, that the Court can or should exercise discretion regarding asylum in this case. Very briefly, to sum up, since I am out of time. Well, don't we — don't we — I mean, we have this rule, and the BIA has ruled that the forced sterilization of one spouse is an act of persecution against the other, and has, I'm reading from one of our cases, thereby extended per se eligibility to those whose spouses have been forcefully sterilized. So we say they've sort of made out a case, but then it goes back and the BIA exercises its discretion. Isn't that the way it works? I believe so, Your Honor. Well, you know, cases go so many different ways. You know, looking for this case that talks about someone that comes in and, you know, lies, doesn't speak truthfully when they're applying for a visa or when they get here. You know, they're refugees and they're desperate and they want to get out of the country. And you referred to that case earlier, but I can't seem to find it here in my notes. The case I believe is Achenmad, A-K-I-N-M-A-D-E, which I hopefully cited in my — I apologize, Your Honor. I did not cite it in my opening brief. Achenmad is a case that was decided in the late 90s. I suggest you file a 28-J letter before you leave the courthouse. I'm sorry. It is cited in my reply brief, Your Honor. What's the name of the case? Achenmad, A-K-I-N-M-A-D-E v. I-N-S, 196, F-3rd, 951. It's a 1999 case. 1951? 951. F-3rd. I'm sorry. 196, F-3rd. 196. I know we're getting close to the 900. 196, F-2nd. F-3rd, 951. 951. It's a 1999 case, Your Honor. Well, you know, I'll just say this. We had the same administrative law judge in a case yesterday. Oh, was this Lattimore? Well, yes. Yes, Your Honor. The same one. And a case involving rape. And, well, I don't want to give away our feelings about her, but we can talk about that among ourselves maybe. Since I am over time, may I just briefly sum up, and then I can turn it over to the Respondent's counsel? The grounds for the judge's findings fall into basically four categories. The judge's speculation about what the court or what the government should have done, speculation about what the Petitioner should have known, failure to produce corroborating documentary evidence, and unclear testimony. This is regarding his detention and manner of escape, that the judge never gave him an opportunity to explain. And all four of these categories are found under the circumstances faced in this case to not constitute substantial evidence sufficient to support an adverse credibility finding. Therefore, since the judge's credibility finding, adverse credibility finding is not supported by substantial evidence, Petitioner should be deemed credible by this Court. If there are no further questions.  Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Now, don't forget we're dealing with a pro-life administration. Think about that. Mr. Ashcroft. Careful. Everything we say is taped. I won't forget that, Your Honor. John Andre for Respondent John Ashcroft. We ask the Court to affirm the immigration judge's decision. Is your name John Andre? John Andre, yes. One of my law clerks' name is John Claude Andre. He's here today. We ask the Court to affirm the immigration judge's decision for a number of reasons. In addition to an over-and-above discussion that the Court was having about the questions that arose about how he obtained his visa, the immigration judge in this case specified no fewer than nine independent separate reasons for finding his account implausible and inconsistent. We had the same thing in the other case. I'm having a little trouble here. We had the same thing in the other case. We had the same thing in the other case. Oh, yeah. Same stuff, you know, speculation, you know, what should know, you know, speculating what he should know of and all the rest of it. All of these were – all of these factors that were listed, that were discussed by the immigration judge in her decision, were based on inconsistencies and implausibilities in his account, and for that reason, we would urge the Court to affirm on any one or any number of those reasons. First off, there is the implausibility about his claim to have been punished for having a second child, but at the same time being permitted to open a restaurant. It seems to be inconsistent that the government wanted to punish somebody that they would issue them a license to have. Well, no. They had the second child, but that was the first – that was the first mistake. And – but, you know, the child never registered, can't go to school. It's almost like a non-person in China, this little girl. There was a lot of punishment connected with that kid. She's – she's – she's marked for life. I believe in – actually, I believe the first child was a boy. First child was a boy and – The second child was a girl. Well, the claim in this case, Your Honor, is that there were no children after the first childhood. The second pregnancy was aborted and the third was aborted and the fourth was aborted. And his claim was that after the – the – Yeah, they had a lot of forced abortions. I remember that. Didn't they have – didn't they have an abortion where the child was in its last trimester, 7 months old? I don't believe in – that's the claim in this case, Your Honor. But it happened here. She was 7 months old, pregnant. I don't believe that's the claim. Well, I thought I read that. In any event, Your Honor, my point was that the – It's called a partial birth of abortion. Yes, that's – my point was that there was an inconsistency between his claims of being punished by the government and being able to open the restaurant. In addition, there was an inconsistency between his claim of being destitute and poor as a result of his losing his job and as a result of his wife also losing her job and his travels to the different countries to – Well, didn't they – wasn't there something there about he had a friend who had a travel agency and they were sending this troop off to entertain and one of the places they were going to stop was Shanghai. Was it Shanghai? Singapore. Singapore, yeah. So he got him in as part of the tour. And then didn't he have a rich – didn't he have a rich relative or uncle in Hong Kong? I don't recall anything about that in this case, Your Honor. What I do recall is that he – Somebody in the family had money. Well, apparently, because he was able to travel to all these places, but at the same time he was claiming that he was being punished for not having a job and losing his job and also his wife losing a job at the same time. He got $6 a month welfare. I'm sorry? He got $6 a month welfare. Right. A lot of money. His wife apparently was – When she lost her job, they gave her $6 a month welfare in U.S. money. Yes, that's correct, and it worked out to $50 Chinese dollars per month and that probably worked out to around $6 U.S. dollars per month, which he's claiming is not sufficient for a family to live on. However, at the same time he's claiming that he's poor and destitute, he's traveling to all these places. And another inconsistency and implausibility in the record, Your Honor, was the claim of escaping from the detention center. He claimed that he was detained by the police and put in a detention facility which didn't have a secure window. He crawled out of the toilet window.  Crawled out of the toilet window, didn't he? Out of the bathroom window. Implausibility. First off, the immigration judge noted a number of implausibilities about that. First off, that there would be an unsecured window in a restroom in a detention facility, for one thing. Secondly, that he would be allowed to use the restroom frequently without any kind of an escort. And third, that he would be able to make an escape from a detention facility with all of the security personnel around. It seemed like a very implausible, impossible claim to make in view of the type of ---- People escape from prison every day, don't they? I don't know if they do in China. I bet they do. What does the country report say about escapees? Say anything? The country report doesn't have any information one way or the other regarding escapees. I'm not familiar with any. The other issue, of course, was what was being discussed previously about the visa. I think that the question that the immigration judge and the problem that the immigration judge had about the visa issue was that Mr. Gee was not giving him any information about how he got the visa. The immigration judge and the immigration lawyer were trying to get some information from him about how he obtained it, and he kept saying, I don't know. My friend got it. He didn't give any information. And so the immigration judge really didn't know what to believe because he wasn't working on it. Yeah, well, people get desperate, you know. Judge Takasugi Sung won an Oscar for a documentary on a Japanese consul general who gave out unauthorized visas to Jewish people who were afraid of being executed to go to the gas chamber. I mean, that's fraudulent, isn't it? Well, certainly people are desperate to escape from China. There's no question about that, and that sometimes leads them to tell falsehoods and tell false stories to the immigration authorities about why they're leaving China. But the fact that they're desperate to leave China and to leave an oppressive system does not justify them not telling the truth about what happened to them in China. Counsel, if I go through this record and I focus on family planning issues solely. Yes. He has testified concerning facts relating to that, and there's no real dispute about it, I don't think, on your part. But where is there anything in the record where the government carries a burden of proof to refute that testimony? There is no such. Why don't we say that he qualifies under the family planning rule and send it back for the exercise by the attorney general of whether he's eligible for asylum? Because he hasn't met his burden of showing that he has a credible claim. You're saying his family planning claim is not credible? He's lying? Yes. You say you have no evidence to refute it. Well, the government is under no obligation to refute anything. But when somebody carries the burden of proof with testimony and it appears on its face credible, then the government has a burden of proof of going forward with contrary evidence. And you admit to me that you did not present any contrary evidence. So that's where I find myself, and you tell me where I'm wrong. Well, I — with all due respect, I think where you're wrong, Your Honor, is that that's assuming that he's testified credibly. He has to testify credibly in order to get to the point where the government would have. On those facts, I don't care about whether he went through the bathroom window or some of the other — where he got his money, all that stuff. But with respect to family planning, I wanted to narrow it to that testimony. It seems credible to me as I read the record. When we're talking about escaping from the bathroom window, we are talking about family planning. So as I understand your argument, if we conclude that his testimony is credible, even if it's only as to that part relating to family planning, then you would concede that since the government offered nothing to rebut it, the appropriate disposition would be to remand it for — it would be — the appropriate disposition would be to remand — first off, our position would be that the court should specify where the immigration judge erred in finding that he was not credible, remand it back for further proceedings, number one, on whether he is credible on those specific claims, and number two, if credible, then whether or not he qualifies for asylum under the family planning law. But the I.J. made no lack of credibility finding with respect to any family planning issue that I'm aware of. I respectfully disagree, Your Honor. What's directly related to family planning that is not credible? He's — This is the whole policy in China. Everybody knows it. The court says that.  All right. And where's the evidence that she didn't, was not forced? That — well, there's — that's another question that would have to be — that would have to be reviewed by the immigration court. No. What did you present to the I.J. that said that is not true testimony? If an individual is — if an individual's story is not credible and not plausible, then that goes to their entire testimony. And the — he was not — he was not plausible and not credible with respect to whether or not they were being punished for violating the one-child policy. So the inconsistencies relate to the escape from the bathroom, and he was poor. Money issues. And, you know, yet he had — somehow had the means of taking his trip and living. Those two things, right? That's right. There's the extensive travel. The point the immigration judge made about his wife still receiving a stipend after she was — it didn't — it seems to me that if somebody — if the government wants to punish somebody, they would not terminate them from their job and keep paying them. Well, but everybody gets a stipend in China. You know. Well, then — We — we — we — It's a socialist state. It's a communist state. All right. Well — You know. In any event, it seems like — They each according to their need. Do you know that? Well, I would — I would — I would disagree with — with the characterization that everybody is treated the same. But in any event, there were other — other factors that, in addition to the problem with the visa — Well, I mean, did you check that out, that when you — you know, when you get — you know, when you get kids and that you — that you don't get the equivalent of $6 a month? It's about 20 cents a day, I guess. I see I'm way over my time. That's all right. We like you. All right. Nice try, John. And I think this actually raises a good point, and that is that there may be some reasons for perhaps questioning some of the conclusions of the immigration court. But this Court and the Supreme Court has made it very clear that the — if the — reasonable people can disagree on what the evidence means, but as long as there is some evidence to support the non-credibility finding, as long as there's something in the record, some inconsistency, some implausibility, in fact, this Court — Has to go to the heart, you know. It does have to go to the heart, absolutely. Not to the bathroom, but to the heart. Each one of these inconsistencies does go to the heart of his claim that he was being punished and that he was persecuted as a result of the population control policies. And, in fact, this Court recently in Wang v. United States — or, excuse me, Wang v. Ashcroft decided in December, it was a case involving a situation very similar to this, in which there were a number of implausibilities and inconsistencies and non-credibility findings by the immigration judge, which this Court did reject. However, there were still some that were substantiated. And, therefore, because there were some reasons that were plausible that were — that had a basis in the evidence, the Court ended up upholding the adverse credibility determination in that case. So, basically, my point is, even if the Court were to find that some of the reasons given by the immigration judge were not sufficient, there were still some that were sufficient and, for that reason, should affirm the Court's decision. Thank you very much. Thank you. All right. Rebuttal. Thank you, Your Honors. I understand that I'm already over time, so I'll try to be brief. Respondent has raised the manner, characterized his travel before he opened up his restaurant in 1998 as extensive. I think I pointed out in my reply brief that it was actually one trip. It lasted for approximately three weeks. And Respondent reasonably explained why that trip happened and how it happened. Of course, the law of the circuit is if there's an apparent discrepancy, the Respondent has an obligation to provide a reasonable explanation for that apparent discrepancy, and he has done so. Regarding the escape, I already argued in my principal argument that he was never given an opportunity to explain or even ask whether or not he knew why there were no bars on the windows. I would just suggest to the Court that there is at least one possible explanation in one other case that I have. It was inside an enclosed compound. The Respondent in that case had actually made arrangements and bribed the guard to open up the outer gate. That is why there was no bar on the window, because the bars and the barbed wire were actually on the wall surrounding the compound. We don't know if that's true in this case, because the Respondent was never given an opportunity to provide an additional explanation regarding that. And, of course, the circuit holds that under those circumstances, such an adverse credibility finding is not supported by substantial evidence. Unless the Court has any other questions, I have no further rebuttal. Thank you. Thank you, Your Honor. All right. The matter is submitted.
judges: Pregerson, Beezer, Tallman